IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA MCSPARRAN, | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 1:13-CV-1932 |
| | : |
| COMMONWEALTH OF | : |
| PENNSYLVANIA, PENNSYLVANIA | : |
| DEPARTMENT OF | : |
| ENVIRONMENTAL PROTECTION, | : |
| KELLY HEFFNER, and JEFFREY | : |
| LOGAN, | : |
| Defendants | : |

*M E M O R A N D U M*

I. *Introduction*

Plaintiff is Patricia McSparran. Defendants are the Commonwealth of

Pennsylvania (the Commonwealth); the Pennsylvania Department of Environmental

Protection (the DEP); Kelly Heffner, the DEP's Deputy Secretary for Water Management;

and Jeffrey Logan, the DEP's Executive Deputy Secretary for Management and

Administration.

Plaintiff alleges she was subjected to harassment and then fired from her

job as Director of the DEP's Bureau of Waterways Engineering and Wetlands on the

basis of her sex. She also alleges her right to due process was violated when she was

not given a hearing. She makes the following claims: (1) a 42 U.S.C. § 1983 claim based

on her federal rights to equal protection; (2) a section 1983 claim based on her right to

due process; (3) a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e *et seq.*; (4) a claim under the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951 *et seq.*; (5) a state-law claim for defamation; and (6) a state-law claim for intentional infliction of emotional distress.

We are considering Defendants' Rule 12(b)(6) Motion to Dismiss.

II. *Standard of Review*

On a Rule 12(b)(6) motion, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).

A complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Nonetheless, a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

The Third Circuit has described the Rule 12(b)(6) inquiry as a three-part process:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)(quoted cases omitted).

With ths standard in mind, we set forth the background to this litigation, as Plaintiff alleges it.[1]

III.  *Background*

Plaintiff is a member of a protected class based on her gender. (Doc. 1, Compl. ¶ 11). She is "experienced and accomplished in the field of environmental

---

[1] Citing *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001), Plaintiff asserts she is entitled to have her "[d]iscrimination and other civil rights claims" reviewed under a "liberal notice pleading" standard. Plaintiff is mistaken. First, *Weston* did not say that such claims are subject to a liberal standard of review; it said that all civil suits in federal court were subject to "liberal notice pleading requirements" under Rule 8. *Id.* at 428. Second, if *Weston*'s standard of review would have made a difference here, it has been overtaken by *Twombly* and *Iqbal.*

protection." (*Id.* ¶ 12). "On or about March 15, 2004, Plaintiff was hired as an Executive Assistant for the DEP in the Office of Water Management." (*Id.* ¶ 13).

On June 9, 2006, she was promoted to Director of the Bureau of Waterways Engineering and Wetlands. (*Id.* ¶ 14). "Except for her final weeks of employment, Plaintiff was the sole female Bureau Director in Water Management of DEP." (*Id.* ¶ 15). Plaintiff complained to her supervisor, Cathleen Curran Myers, then the Deputy Secretary of Water Management, "that her salary was less than her male counterparts." (*Id.* ¶¶ 14 and 16). On July 3, 2007, "Plaintiff was awarded an exceptional pay increase of two (2) steps" to minimize the salary disparity with her male counterparts and to recognize "her exemplary performance with increased responsibilities." (*Id.* ¶ 18). Nonetheless, the "exceptional pay increase did not equalize the pay disparity." (*Id.* ¶ 19).

In recommending Plaintiff for the pay increase, Myers wrote: Plaintiff's "problem solving experience and leadership abilities . . . greatly served the Bureau"; Plaintiff "enhanced existing as well as implemented new initiatives"; Plaintiff "demonstrated excellence in communicating with the public in response issues in the Delaware River Basin related to the new York reservoirs"; and Plaintiff's efforts in that regard "helped to spawn an integrated study related to the flooding and reservoirs." (*Id.* ¶ 17 and Compl., Ex. B).

In 2009, John Hines, replaced Myers as Deputy Secretary. (*Id.* ¶ 20). Hines supervised Plaintiff from 2009 through January 2011. (*Id.* ¶ 21). During this time, Plaintiff complained to Hines "that she was treated differently and disparately than the

other two (2) male bureau directors." (*Id.*). She also complained "that she was denied equal wages and overlooked for responsibility in Hines' absence as he favored the male directors." (*Id.*). "Hines refused to act on her complaints of disparate treatment." (*Id.* ¶ 22). Further, "Hines subjected her to sexual harassment including unwelcome touching, leering and sexual advances and innuendos that she repeatedly rejected." (*Id.* ¶ 23).

In January 2011, Hines was promoted, and Michael L. Krancer was appointed Acting Secretary. (*Id.* ¶¶ 24 and 25). In an e-mail, dated February 16, 2011, Krancer thanked Plaintiff and another employee for their "terrific briefing paper on the H20 program and the two Montco projects" and said he appreciated their "workmanlike efforts." (*Id.* ¶ 25, and Compl., Ex. C). In an e-mail, dated February 18, 2011, Krancer thanked Plaintiff for information she supplied about a particular project, saying "it [was] exactly what I was looking for." (*Id.*). In an e-mail, dated May 5, 2011, another DEP official thanked Plaintiff for giving him a "quick and comprehensive response to [his] late afternoon inquiry." (*Id.*).

In June 2011, defendant Heffner was promoted to the position of Deputy Secretary of Water Management, and became Plaintiff's direct supervisor. (*Id.* ¶ 26). "Plaintiff complained on multiple occasions to Defendant Heffner that she was denied equal wages to her male counterparts and unequal work conditions." (*Id.* ¶ 27). In response, "Defendant Heffner shunned the plaintiff and precluded her from business communication, information and meetings." (*Id.*). Further, "Defendant Heffner published falsehoods about the plaintiff alleging that she was not adhering to Heffner's supervisory

directives and unwilling to comply with Administrative goals." (*Id.*). Moreover, "Defendant Heffner withheld business communication, cancelled one-on-one meetings, failed to respond to emails from the plaintiff and excluded the female plaintiff from essential meetings pertaining to her programs." (*Id.* ¶ 28). Additionally, Defendant Heffner "circumvented the 'chain of command' and deliberately communicated with her subordinate staff to keep the plaintiff out of the loop and in the dark on policy changes and implementations." (*Id.*). Also, "[o]n occasion she invited male Jeffrey Means, then not associated with Water Management, instead of the plaintiff to internal meetings that he had no business or reason to be present [at]." (*Id.*). "The harassment, hostility and exclusion directly affected the [P]laintiff's ability to perform her job causing her emotional distress and harm." (*Id.* ¶ 29).

During the time Heffner was Plaintiff's supervisor, Heffner did not prepare and present a performance review of Plaintiff. (*Id.* ¶ 31). Hines did her last performance evaluation, dated January 14, 2011. (*Id.* ¶ 30). He rated her as exceeding expectations on her management skills and described her as a "dedicated manager who is astute in understanding key details on issues as well as having the ability to shift out key issues for decisions." (*Id.*, and Compl., Ex. D).

Plaintiff avers that she continued with her excellent work, as evidenced by e-mails. (*Id.*, ¶ 33). On January 10, 2012, an official with a state senator thanked her for help she was giving on a certain project. (*Id.*, and Compl., Ex. F). On March 20, 2012, a DEP official thanked her for her participation in a meeting. (*Id.*). On April 3, 2012, a

federal official thanked Plaintiff for her "assistance on granting emergency permit clearance for the EWP projects," related to post-flood recovery. (*Id.* ¶ 34, and Compl., Ex. G).

However, two days later, on April 5, 2013, "without notice or warning, HR Director Aimee Brough presented the termination letter to Plaintiff stating and notifying her that she was involuntarily separated because her services 'were no longer required.'" (*Id.* ¶ 35, and Compl., Ex. H). Plaintiff asked if she was being fired for cause, and Ms. Brough "responded 'no' and she reread the termination letter emphasizing 'services no longer required.'" (*Id.* ¶ 36). "The termination decision was made by Defendant Heffner and Defendant Logan." (*Id.* ¶ 38). Before her termination, Plaintiff had not been warned about any performance issues. (*Id.* ¶ 45).

Plaintiff was replaced by "a less qualified male," Jeffrey Means. (*Id.* ¶¶ 37 and 40). Defendant Heffner and Means had "a longstanding sexual relationship," and Heffner "handpicked" Means as Plaintiff's replacement before Plaintiff's termination. (*Id.* ¶¶ 41-42).

"Defendant Heffner deliberate[ly] orchestrated Plaintiff's separation[,] falsely accusing her of poor performance" so that she could be replaced by a male, Jeffrey Means. (*Id.* ¶ 43). "Heffner engaged in a pattern and practice of preferential treatment and favoritism towards males and more specifically towards male subordinate Jeffrey Means to [sic] whom she admittedly had a longstanding sexual relationship." (*Id.* ¶ 46).

Beginning in November 2011, Heffner "acted to harm and defame" Plaintiff. (*Id.*). "Heffner published falsehoods about Plaintiff's work performance to tarnish her reputation and discharge her from employment." (*Id.* ¶ 44). Heffner "accused her of being insubordinate, not a team player, failing to support the Administration and Agency staff, objectives and programs, fail[ing] to demonstrate leadership qualities, and 'go[ing] beyond accepted advocacy and staff.'" (*Id.*, and Compl., Exs. M and N).

These false accusations "were published to colleagues and staff members," (*id.* ¶ 50), and to the "industry community and those who had no right to know." (Id. ¶ 91). "The published accusations were false," and they "tarnished Plaintiff's good name and reputation." (*Id.* ¶¶ 47-48). Defendant Logan "wrongfully republished the falsehoods." (*Id.* ¶ 49). Additionally, "Defendants had no right to publish the falsehoods and any privilege was abused." (*Id.* ¶ 51).

"Defendants retaliated against the plaintiff for reporting and complaining of disparate treatment" and "for complying with legislative inquiry." (*Id.* ¶¶ 55 and 56). Defendants "acted jointly and separately . . . ." (*Id.* ¶ 54). Plaintiff suffered reputational harm that foreclosed other opportunities." (*Id.* ¶ 60).

"As a result of the defendants' joint and separate conduct, the plaintiff suffered financial losses, lost income, lost employment benefits, emotional distress, physical harm and aggravation, humiliation, embarrassment, anguish, lost reputation and lost career." (*Id.* ¶ 61).

IV.  *Discussion*

   *A.  The Claims Under 42 U.S.C. § 1983*

   Count I sets forth the following constitutional claims: (1) an equal-protection claim; (2) a due-process claim; and (3) a conspiracy claim.[2]  In addition to defendants Heffner and Logan, this count also named the Commonwealth and the DEP, but in her opposition brief, Plaintiff withdraws these claims as against the latter two parties, and pursues them only against defendants Heffner and Logan in their individual capacities.[3] We will therefore dismiss these claims as against the Commonwealth and the DEP and against defendants Heffner and Logan in their official capacities.  The claims will proceed only against Heffner and Logan in their individual capacities.

   1.  *The Equal-Protection Claim*

   Defendants first argue that Plaintiff's equal-protection claim should be dismissed because any rights asserted in the claim "are fully and adequately addressed" in her Title VII claim and because Plaintiff "appears to be attempting to recast a Title VII claim as one under section 1983."  (Doc. 8, ECF p. 14).  If Plaintiff were alleging that she was denied equal protection because Defendants had violated her rights under Title VII,

---

   [2]  In her brief, Plaintiff asserts she has also made a First Amendment retaliation claim. (Doc. 14, ECF p. 9).  The complaint does allege retaliation, but Count I appears to make only the three claims we just listed.  (Compl. ¶¶ 64-76).   We will therefore treat Count I as only making these three claims.

   [3]  Defendants had moved to dismiss Count I as against the state entities and the individual defendants in their official capacities under the Eleventh Amendment.  (Doc. 8, pp. 4-5).  Plaintiff then chose to withdraw her claims against the Commonwealth, DEP, and Defendants Heffner and Logan in their official capacities.  (Doc. 14, p. 2).

we would agree with them.  *See Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 249 (E.D. Pa. 1999)("plaintiffs may not vindicate rights created under Title VII under Section 1983").  However, Plaintiff is basing her section 1983 claim on a violation of the Equal Protection Clause of the Fourteenth Amendment.  In these circumstances, she can pursue a section 1983 claim alongside a Title VII claim, even if both claims arise from the same set of facts.  *West v. City of Bethlehem*, No. 11-CV-1194, 2011 WL 5105381, at *7 (E.D. Pa. Oct. 26, 2011)("even if a § 1983 claim and Title VII claim are based upon the same facts, a plaintiff may bring both claims if an independent constitutional basis exists for his § 1983 claim"); *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F. Supp. 2d 476, 479-80 (E.D. Pa. 1998)(the plaintiff can pursue an equal-protection claim and a Title VII claim based on gender discrimination).  *See also Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990)("the comprehensive scheme provided in Title VII does not preempt section 1983, and . . . discrimination claims may be brought under either statute, or both.").

Defendants next move to dismiss the equal-protection claim on the basis that Plaintiff has failed to meet the pleading requirement that sufficient facts be pled to make the claim plausible.  Defendant assert Plaintiff has merely made conclusional allegations in support of the claim.

Plaintiff has made an equal-protection claim based on her membership in a protected class.  (Compl. ¶ 11).  To allege a protected-class equal-protection claim, a plaintiff must allege that: (1) she is a member of a protected class; and (2) based on her

gender she received different treatment than that received by other similarly situated individuals. *Oliveira v. Township of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)(nonprecedential)(citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). Persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

Citing *Tomino v. City of Bethlehem*, No. 08-CV-6018, 2010 WL 1348536, at *14 (E.D. Pa. Mar. 31, 2010), Plaintiff argues that it is sufficient for her to allege in conclusional fashion that she was treated differently from others similarly situated. We disagree. *Tomino* does not apply here. In that case, the district court had allowed a conclusional pleading because the plaintiff had made a "class of one" equal-protection claim. The district court was following *Phillips v. County of Allegheny*, 515 F.3d 224, 244 (3d Cir. 2008), where the Third Circuit held that allegations of different treatment of similarly situated individuals only had to be pled generally for a "class of one" claim. In contrast, Plaintiff here is making a protected-class equal-protection claim.[4] We will therefore follow the pleading requirements set forth in *Twombly* and *Iqbal*.[5]

---

[4] Indeed, Plaintiff could not make a "class of one" claim even if she wanted to, as such a claim does not apply in the public-employment context. *See Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 607, 128 S.Ct. 2146, 2156, 170 L.Ed.2d 975 (2008).

[5] In making its ruling, the Third Circuit relied on the Second Circuit's decision in *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003), which also allowed general pleading on this element of a "class of one" equal-protection claim. The Second Circuit had relied on *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), in which the Supreme Court had recognized the "class of one" claim, for its ruling that only general allegations of different treatment of similarly situated individuals are required. However, as

Plaintiff alleges membership in a protected class based on her gender. (Compl. ¶ 11). This satisfies the first element of her equal-protection claim. We must therefore determine if her allegations that she received different treatment than similarly situated individuals are sufficiently factual to make her equal-protection claim plausible.

We note the relevant allegations. There were only two other bureau directors, both males, in water management. (*Id.* ¶ 21). Plaintiff alleges "her salary was less than her male counterparts," (*id.* ¶¶ 14 and 16), even after "an exceptional pay increase of two (2) steps" to minimize the salary disparity with her male counterparts and to recognize "her exemplary performance with increased responsibilities." (*Id.* ¶¶ 18 and 19). "Plaintiff complained on multiple occasions to Defendant Heffner that she was denied equal wages to her male counterparts and unequal work conditions." (*Id.* ¶ 27).

In April 2013, Plaintiff was terminated. (*Id.* ¶ 35). "The termination decision was made by Defendant Heffner and Defendant Logan." (*Id.* ¶ 38). Plaintiff was replaced by "a less qualified male," Jeffrey Means. (*Id.* ¶¶ 37 and 40). Defendant Heffner and Means had "a longstanding sexual relationship," and Heffner "handpicked" Means as Plaintiff's replacement before Plaintiff's termination. (*Id.* ¶¶ 41-42).

"Defendant Heffner deliberate[ly] orchestrated Plaintiff's separation[,] falsely accusing her of poor performance" so that she could be replaced by Means. (*Id.* ¶ 43).

---

one of our colleagues in the Middle District has noted, in *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), after *Iqbal* was decided, the Second Circuit abrogated *DeMuria* and applied *Iqbal*'s pleading standard to a "class of one" claim. *See McLaughlin v. Forty Fort Borough*, No. 13-CV-0016, 2013 WL 4069528, at * 14 n.9 (M.D. Pa. Aug. 9, 2013).

"Heffner engaged in a pattern and practice of preferential treatment and favoritism towards males and more specifically towards male subordinate Jeffrey Means to [sic] whom she admittedly had a longstanding sexual relationship." (*Id.* ¶ 46).

We begin with the allegation that Plaintiff was terminated and replaced with the less-qualified Means because Heffner had a longstanding sexual relationship with Means. This allegation is specific enough, but as Defendants argue, it cannot support an equal-protection claim based on gender discrimination.[6] *See DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304, 308 (2d Cir. 1986)(no gender discrimination under Title VII when the male plaintiffs claimed that a female was given the job because of her romantic relationship with the hiring supervisor because the discrimination was not based on the plaintiffs' gender but on the supervisor's preference for his "paramour" and a female applicant for the job would face the same obstacle); *Handley v. Phillips*, 715 F. Supp. 657, 674-75 (M.D. Pa. 1989)(an allegation that the female plaintiff was given "dissimilar treatment resulting from" the defendant's "alleged desire to promote another female to whom he is romantically linked is not the basis for a Title VII claim")(citing *DeCintio*).

We turn to the other allegations, for even if Plaintiff does not have a "paramour preference" claim, as it has been described, *see Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013), if she makes

---

[6] Defendants make this argument against Plaintiff's Title VII claim, but we can use it here because the same standard applies to equal-protection claims and Title VII claims. *Wood v. University of Pittsburgh*, 395 F. App'x 810, 816 (3d Cir. 2010)(nonprecedential)("The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII.").

adequate allegations that her termination and other treatment were nonetheless based on gender, she may state a valid claim. *Cline v. Bala Nursing & Retirement Ctr.*, 1998 WL 136524, at *4 (E.D. Pa. Mar. 20, 1998)(finding that female plaintiff had presented enough evidence on summary judgment for the jury to decide that her termination and replacement by a male was based on her female supervisor's gender-based discrimination even though the plaintiff also alleged the decision was made because the her male replacement was sexually involved with the supervisor).

Plaintiff's other allegations are not enough to support an equal-protection claim. What is absent are sufficient factual allegations that Plaintiff received different treatment than that received by other similarly situated individuals. To begin, Plaintiff's allegations concerning similarly situated individuals are deficient. Plaintiff refers to the two male bureau directors but does not allege they were similarly situated; Plaintiff does not even make a general allegation they were similarly situated. Even under *Phillips*, such an allegation is necessary. 515 F.3d at 244 ("Although *DeMuria* does relax the 'class of one' pleading requirements by negating the need for specificity, an allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated."). For example, Plaintiff does not allege whether the other directors had similar responsibilities or authority within the department in comparison to Plaintiff. *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004)("In order to determine who might qualify as a similarly situated employee

we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace.").

Nor does Plaintiff provide factual allegations to support her general claim that she was treated differently from the male bureau directors. Plaintiff generally alleges that she complained to Heffner "on multiple occasions . . . that she was denied equal wages to her male counterparts and unequal work conditions," (*id.* ¶ 27), that she was replaced by "a less qualified male," Jeffrey Means, (*id.* ¶¶ 37 and 40), and that "Heffner engaged in a pattern and practice of preferential treatment and favoritism towards males and more specifically towards male subordinate Jeffrey Means to [sic] whom she admittedly had a longstanding sexual relationship." (*Id.* ¶ 46). These allegations are not enough.

We therefore conclude that Plaintiff has failed to allege an equal-protection claim.

### 2. *The Due-Process Claim*

Plaintiff alleges that defendants Heffner and Logan violated her right to due process when they publicized the false reasons for her firing and then fired her without giving her a hearing.

"[R]eputation *alone* is not an interest protected by the due process clause" of the Fourteenth Amendment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)(quoted case and internal quotation marks omitted)(emphasis added in *Hill*). Instead, the Due Process Clause . . . protects a liberty interest in reputation only when

-15-

the plaintiff shows a "stigma" to reputation "*plus* deprivation of some additional right or interest." *Id.* Under this "stigma-plus" test, when a public employer "'creates and disseminates a false and defamatory impression about the employee in connection with his termination,'" due process applies and the employee is entitled to a "name-clearing hearing." *Id.* (quoted case omitted). The "stigma" is the "creation and dissemination of a false and defamatory impression," and "the termination is the 'plus.'" *Id.*

In moving to dismiss this due-process claim, Defendants argue that Plaintiff has failed to allege that the reasons were disseminated publicly, as required for the claim, and not just within the DEP. They assert her allegation that the reasons were published to "colleagues and staff," (Compl. ¶¶ 50 and 91), is not a dissemination to the public. They contend her allegation that the reasons were publicized to the "industry community and those who had no right to know," (*id.* ¶ 91), fails to plead sufficient facts.

We need not address Defendant's argument. The due-process claim fails for another reason. Defendants' remarks were about Plaintiff's competence, and remarks that go only to professional competence are not enough to satisfy the stigma part of the claim. *Brown v. Montgomery County*, 470 F. App'x 87, 91 (3d Cir. 2012)(nonprecedential)(remarks accusing the plaintiff of malfeasance and of violating the county code of ethics were not stigmatizing)(citing *Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845-46 (8th Cir. 2002)); *Kohn v. School Dist. of City of Harrisburg*, 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011)(Caldwell, J.)(statements that only questioned the plaintiff's competence and job performance were not stigmatizing); *Poteat v. Harrisburg*

*Sch. Dist.*, 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999)(Caldwell, J.)("Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge.")(cited cases omitted).

Plaintiff has therefore failed to state a due-process claim.

### B. *The Title VII Claim*

Count II sets forth a Title VII claim. Defendants move to dismiss this claim on the basis of the "paramour preference" defense. *See DeCintio, supra,* 807 F.2d at 308. We dealt with this argument in connection with the equal-protection claim. For the reasons given above in connection with the latter claim, Plaintiff has failed to allege a Title VII claim.

### C. *The PHRA Claim*

Count III sets forth a PHRA claim. In addition to defendants Heffner and Logan, this count also named the Commonwealth and the DEP, but in her opposition brief, Plaintiff withdraws this claim as against the latter two parties, and pursues them only against defendants Heffner and Logan in their individual capacities.[7] We will therefore dismiss this claim as against the Commonwealth and the DEP and against defendants Heffner and Logan in their official capacities. The claim will proceed only against Heffner and Logan in their individual capacities.

_____

[7] Defendants had moved to dismiss Count III as against the state entities and the individual defendants in their official capacities under the Eleventh Amendment. (Doc. 8, pp. 8-9). Plaintiff then chose to withdraw her claims against the Commonwealth, DEP, and Defendants Heffner and Logan in their official capacities. (Doc. 14, p. 2).

Defendants move to dismiss the PHRA claim for the same reasons they move to dismiss the Title VII claim. For the reasons given above in connection with the equal-protection claim, Plaintiff has failed to allege a PHRA claim.[8]

Defendants also move to dismiss this claim against the individual defendants on the ground that individuals cannot be liable on PHRA claims. In opposition, Plaintiff asserts that Heffner and Logan can be liable as aiders or abettors under 43 Pa. Stat. Ann. § 955(e).[9] In reply, citing *Scott v. Sunoco Logistics Partners, L.P.*, 918 F. Supp. 2d 344 (E.D. Pa. 2013), Defendants contend that Heffner and Logan cannot be liable under an aiding-and-abetting theory if the Commonwealth and the DEP cannot be liable.

*Scott* is distinguishable. In that case, the plaintiff had failed to establish a PHRA claim against the employer on the merits. In those circumstances, the court ruled that an employee could not be held liable for aiding and abetting. 918 F. Supp. 2d at 357 n.5. In the instant case, on the other hand, there has been no determination that a claim against the Commonwealth or the DEP lacked merit. Aiding-and-abetting is a valid theory of recovery against Heffner and Logan. *See Holocheck v. Luzerne Cnty. Head*

---

[8] Title VII and PHRA claims are analyzed the same. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008).

[9] In relevant part, section 955(e) provides:

It shall be an unlawful discriminatory practice . . .

(e) For any person . . . or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be unlawful discriminatory practice .
. . .

*Start, Inc.*, 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005)(supervisory employees can be liable under the PHRA for their own acts of discrimination).

  D. *The State-Law Defamation Claim*

  In Count IV, Plaintiff asserts a state-law claim for defamation against Heffner and Logan based on their stated reasons for discharging her. Defendants move to dismiss this claim for three reasons. First, they have sovereign immunity against the claim, citing *La Frankie v. Miklich*, 152 Pa. Commw. Ct. 163, 170, 618 A.2d 1145, 1149 (1992). Second, under the law of defamation, their statements were privileged, citing *Doe v. Kohn, Nast & Graf, P.C.*, 862 F. Supp. 1310, 1327 (E.D. Pa. 1994). Third, the statements were not capable of a defamatory meaning because Plaintiff only alleges that Heffner and Logan made them to a limited audience so that the statements could not have injured Plaintiff in the community, citing *Maier v. Maretti*, 448 Pa. Super. Ct. 276, 284, 671 A.2d 701, 706 (1995).

  In the court's view, all three arguments depend upon whether Plaintiff has made an adequate allegation that the defendants published their statements to a number of persons who had no need for the information. If Plaintiff has made such an allegation, it would defeat a sovereign-immunity defense because it would take the statements out of the scope of the defendants' employment. *La Frankie*, 152 Pa. Commw. Ct. at 170, 618 A.2d at 1149. It would also defeat a claim of privilege as it would show an abuse of the privilege. *Doe*, 862 F. Supp. at 1327 (privilege applies when publication is "to those with

a legitimate interest in the subject matter"). Finally, it would defeat a claim that publication had only been to a limited audience.

As noted, Plaintiff has alleged that the statements "were published to colleagues and staff members," (*id.* ¶ 50), and to the "industry community and those who had no right to know." (Id. ¶ 91). Defendants argue Plaintiff cannot rely on these allegations as they are not sufficiently factual. We agree. *See generally, Rishell v. RR Donnelley & Sons Co.*, No. 06-CV-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007). The reference to colleagues and staff members could very well include personnel who had an interest in the subject matter. The reference to the "industry community" and "those who had no right to know" is too general.[10] Plaintiff did not have to identify these people by name, *Rishell*, 2007 WL 1545622, at *3, but had to allege sufficient facts to show that they were persons with no valid interest in the subject matter.

We conclude that Plaintiff has failed to allege a defamation claim.

E. *The Claim For Intentional Infliction of Emotional Distress*

In Count V, Plaintiff makes a state-law claim for intentional infliction of emotional distress (IIED) against defendant Heffner. Defendants assert that Heffner is immune from this claim in her official capacity and that, in any event, the allegations against her do not state a claim for IIED.

---

[10] In her brief, Plaintiff asserts that the "industry community" is "outside of DEP." (Doc. 14, ECF p. 22). Plaintiff cannot rely on statements in her brief; they must be in her pleading.

We need not address the first argument as we agree with the second one. "The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an 'extreme or outrageous type.'" *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988)(quoted case omitted). "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of [IIED]." *Id.* Generally, the employer must have "engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.*

Here, although Plaintiff alleges retaliatory actions, she does not allege that Heffner engaged in sexual harassment. Instead, Plaintiff alleges that Heffner denied her wages and working conditions equal to the two male bureau directors, and eventually fired her based on false grounds. These allegations fail to state an IIED claim in the employment context.

V. *Leave to Amend*

We must decide whether to permit amendment of the dismissed claims. We must grant leave to amend a civil-rights claim even if plaintiff does not request it and even if she is represented by counsel. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). We do not have to do so, however, if amendment would be futile. *Id.*

Because we cannot say at this time that amendment would be futile as to the following claims, we will allow Plaintiff to amend them: (1) the equal-protection claim,

(2) the Title VII claim, (3) the PHRA claim, and (4) the defamation claim. The following claims will be dismissed without leave to amend: (1) the due-process claim, and (2) the claim for intentional infliction of emotional distress.

We will issue an appropriate order.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge


Date: December 17, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA MCSPARRAN,               :
      Plaintiff               :
                         :
    v.               :   CIVIL NO. 1:13-CV-1932
                         :
COMMONWEALTH OF               :
PENNSYLVANIA, PENNSYLVANIA   :   (Judge Caldwell)
DEPARTMENT OF               :
ENVIRONMENTAL PROTECTION,   :
KELLY HEFFNER, and JEFFREY   :
LOGAN,               :
      Defendants               :

*O R D E R*

AND NOW, this 17th day of December, 2013, upon consideration of Defendant's motion (Doc. 7) to dismiss, it is ORDERED that:

1. The motion (Doc. 7) to dismiss is granted, and the Complaint (Doc. 1) is hereby dismissed

2. Plaintiff is granted leave to file an amended complaint setting forth her (1) equal-protection claim, (2) Title VII claim, (3) PHRA claim, and (4) defamation claim with adequate factual allegations in accord with the accompanying memorandum.

3. Plaintiff shall comply with paragraph 2 of this order within twenty-one (21) days of its date. If Plaintiff fails to do so, this action will be dismissed.

               /s/ William W. Caldwell
               William W. Caldwell
               United States District Judge