UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA MCSPARRAN,<br>            Plaintiff | :<br>: |
| v. | :<br>: CIVIL NO. 1:13-CV-1932 |
| COMMONWEALTH OF<br>PENNSYLVANIA, *et al.*,<br>            Defendants | :<br>:<br>:<br>: |

*M E M O R A N D U M*

*I.      Introduction*

We are considering a motion for protective order, a motion *in limine*, and a request to amend a prior order. (Doc. 63; Doc. 65; Doc. 70). This case relates to a complaint in which Plaintiff alleges that Defendants discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964. (Doc. 18). The parties are currently engaged in discovery – a process that has been fraught with contention. In the most recent dispute, Defendants seek: (1) a protective order to preclude Plaintiff's discovery of information they claim is protected by attorney-client privilege; and (2) to exclude evidence of pornographic emails sent or received by employees of Pennsylvania's Department of Environmental Protection (DEP). (Doc. 63; Doc. 65). At the same time, Plaintiff asks us to amend a prior order in which we instructed her to produce metadata associated with electronically stored information. (Doc. 70). For the reasons discussed below, we will deny the motion for protective order, grant the motion *in limine*, and grant the request to amend.

II.        *Discussion*

   A.   *Motion for Protective Order*

On November 18, 2015, Plaintiff deposed Renata Moseley. (Doc. 72-3). Moseley, a Human Resources Analyst at DEP, investigated and responded to the charges of sex discrimination that Plaintiff filed with the Equal Employment Opportunity Commission. (Doc. 72-3 at 6). During the deposition, Plaintiff's counsel inquired about Moseley's investigation. (Id. at 10). Defense counsel objected and cautioned Moseley not to answer any questions concerning actions taken at the direction of agency counsel. (Id.). Due to this instruction, Moseley declined to answer a series of questions about specific steps she took during her investigation. In particular, she did not answer the following questions: (1) whether she checked employee emails; (2) what documents her investigation produced; (3) who she interviewed; (4) if she took notes; and (5) whether she reviewed personnel files. (Doc. 72-3).

On December 15, 2015, in accordance with our preferred practice, Plaintiff sent correspondence to the court notifying us that the parties had reached an impasse on Moseley's deposition. (Doc. 60). In response, Defendants filed a motion for protective order claiming that the information Plaintiff seeks is shielded from discovery by attorney-client privilege. (Doc. 63). As we read their brief, Defendants advance two intertwined theories. First, that Moseley was an employee and agent of DEP, and therefore any legal advice or direction agency counsel gave Moseley is privileged attorney-client communication. Second, that Moseley was an agent of agency counsel because she worked closely with and at the direction of counsel throughout her investigation. Thus, any communication she had with counsel during her investigation is protected.

2

The attorney-client privilege, founded in common law, protects "confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." In re Grand Jury Subpoena, 745 F.3d 681, 687 (3d Cir. 2014). This privilege is not limited to individuals, but extends to circumstances in which a government agency is the client and an interagency lawyer is the attorney. Accord NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975). In addition to the attorney-client privilege, an analogous doctrine set out in the Federal Rules of Civil Procedure protects an attorney's work product. Specifically, Rule 26(b)(3) states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation for litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A).

We find that neither the attorney-client privilege nor the attorney work-product doctrine apply in this instance. The attorney-client privilege only applies to communications; it does not protect disclosure of underlying facts. Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). As explained by the Supreme Court:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Id. Here, we agree with Defendants, under their first theory, that Moseley was an agent of DEP, and therefore any communications between Moseley and agency counsel are privileged. Id. But the information at issue is not a communication. Plaintiff wants disclosure of the steps Moseley took during her investigation – what she did, who she

3

talked to, where she looked – not disclosure of what agency counsel told her. Thus, Plaintiff seeks disclosure of underlying facts, and those facts do not become shielded under attorney-client privilege simply because they may have been included in a communication between Moseley and counsel. Id.

Similarly, the information Plaintiff seeks does not fall within the boundaries of the attorney work-product doctrine. The work-product doctrine applies to documents and tangible things, not facts contained within the documents. See FED. R. CIV. P. 26(b)(3)(A). Only in the rare circumstance in which a party "attempts to ascertain 'historical' facts, which inherently reveal the attorney's mental impressions, [do some courts hold that] the ordinary work-product privilege extend[s] to . . . intangible interests." See, e.g., Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 513 (D. Minn. 1997). Here, we again agree with Defendants, under their second theory, that Moseley was acting as an agent for counsel, and therefore any work product is protected. See Dempsey v. Bucknell Univ., 296 F.R.D. 323, 329 (M.D. Pa. 2013) (recognizing that person can simultaneously be an agent for the client and an agent for the attorney). Yet, Plaintiff is not asking Moseley to produce documents or tangible things prepared in anticipation of litigation, and the steps taken during Moseley's investigation are not historical facts that will inherently reveal agency counsel's opinions and mental impressions. See Onwuka, 178 F.R.D. at 515 (finding that steps taken to conduct an internal investigation into claims of discrimination and retaliation do not inherently reveal the attorney's mental impressions or opinions).

Accordingly, we will deny Defendants' motion for protective order. Plaintiff may inquire into the steps Moseley took during the course of her investigation. She may also inquire into the facts Moseley learned during that investigation. Plaintiff may not,

4

however, discover the contents of conversations Moseley had with agency counsel or the contents of conversations Moseley had with other DEP employees while acting at the direction of agency counsel. Such conversations, whether written or oral, are privileged attorney-client communications.[1]

### B. Motion in Limine

On November, 18, 2015, Plaintiff provided Defendants with a series of documents. The documents, which have been submitted *in camera* for our review, were copies of emails containing pornographic images, lewd images, and sex-based jokes demeaning to women. The emails, made public by the Pennsylvania Attorney General's Office, were sent or received by DEP employees while Plaintiff was employed there. None of the emails, however, involve a named defendant in this case. On December 29, 2015, Defendants filed a motion *in limine* to preclude Plaintiff's use of the emails. (Doc. 65). They argue that the emails are not relevant to Plaintiff's claims and that any probative value that does exist is substantially outweighed by a danger of unfair prejudice. (Id. at 3-4). Accordingly, Defendants ask us to exclude the emails pursuant to Federal Rules of Evidence 402 and 403. (Id.).

Evidence is relevant if it makes a fact of consequence more or less probable than it would be without the evidence. FED. R. EVID. 401. With respect to Plaintiff's claims, the well-established McDonnell Douglas test, by setting out the applicable burden-shifting

---

1. We express no opinion on whether documents produced during Moseley's investigation are shielded by the work-product doctrine. Although we recognize that Moseley was working as an agent for counsel, we have not had the benefit of briefing on the issue of whether the investigation and documents were prepared in anticipation of litigation. See Freedman & Gersten, LLP v. Bank of Am., N.A., 2010 WL 5139874 (D.N.J. 2010) (holding that the "work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy"); (Doc. 74-1) (consisting of DEP policy which directs agency counsel with respect to internal investigations of internal complaints). If the parties reach an impasse on the production of documents, we will entertain correspondence and motions at that time.

framework, identifies which facts are of consequence. Under McDonnell Douglas, Plaintiff first has the burden to set out a prima facie case. To do so, she must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). If Plaintiff establishes a prima facie case, the burden shifts to Defendants to show that they had a legitimate, non-discriminatory reason for the adverse employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). If Defendants make this showing, the burden shifts back to Plaintiff to show that Defendants' proffered legitimate, non-discriminatory reason is a pretext. Id.

The pornographic emails sent or received by non-defendant, DEP employees bear no relation to these elements. Although they may be relevant to a hostile work environment claim – such a claim requires the Plaintiff to show that discrimination was severe or pervasive – all of Plaintiff's hostile work environment claims have already been dismissed. See (Doc. 28). Thus, the emails do not make a fact of consequence more or less probable. Accordingly, we will grant Defendants' motion *in limine* to preclude Plaintiff's evidentiary use of the emails in question.

*C. Request to Amend Order to Produce Metadata*

Finally, we take this opportunity to address a recurring issue about a discovery dispute we previously addressed. At the time Defendants filed the motions *sub judice*, they also filed a motion to compel the production of documents and metadata. (Doc. 66). The motion stated that Plaintiff (1) was producing documents piecemeal, and

(2) produced electronically stored information – namely emails from within DEP – in non-native format and without associated metadata. Therefore, Defendants sought to compel Plaintiff's production of all documents and any metadata associated with electronically stored information.

During a conference call held on January 7, 2016, Plaintiff's counsel agreed to produce the outstanding documents. Because we understood Plaintiff to agree to the motion as a whole, we issued an order granting Defendants' motion and instructed Plaintiff to produce the required documents and metadata by January 22, 2016. (Doc. 67). On January 15, 2016, we received correspondence from Plaintiff's counsel advising us that she never agreed to produce metadata, only the requested documents. Therefore, she asks us to amend our previous order to eliminate the metadata requirement. (Doc. 70).

Metadata is imbedded information that describes the history, tracking, and management of an electronic document. Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 647 (D. Kan. 2005). Courts generally order the production of metadata if (1) it was specifically requested in the initial document request, and (2) the producing party has not yet produced the documents in any form. Aguilar v. Immigration & Customs Enforcement Div., 255 F.R.D. 350, 357 (S.D.N.Y. 2008). Conversely, "[i]f metadata is not [specifically] sought in the initial document request, and particularly if the producing party already has produced the documents in another form, courts tend to deny later requests . . . ." Id.; see also Romero v. Allstate Ins. Co., 271 F.R.D. 96, 106 (E.D. Pa. 2010); Autotech Tech. P'ship v. Automationdirect.com, Inc., 248 F.R.D. 556 (N.D. Ill. 2008).

Here, Defendants failed to specifically ask for metadata in its requests for production of documents.[2] Moreover, Plaintiff already produced the documents in hard copy in November of 2014. We find, consistent with the holdings of our sister courts, that it would be unduly burdensome to require Plaintiff to effectively redo document production in response to Defendants' belated request for metadata. See Romero, 271 F.R.D. at 106; Autotech, 248 F.R.D. at 560 (stating requesting party "was the master of its production requests; it must be satisfied with what it asked for."). Accordingly, we will amend our prior order to relieve Plaintiff of the burden of producing metadata.[3]

III.   Conclusion

For the reasons discussed above, we will deny Defendants' motion for protective order, grant Defendants' motion *in limine*, and grant Plaintiff's request to amend our prior order. We will issue an appropriate order

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

---

2. Defendants' request for production of documents, consistent with Federal Rule of Civil Procedure 34(a)(1)(A), does define "documents" to include "any other compilation of data from which information can be obtained, translated, if necessary, into readily usable form, letters, memorandum, notes and statements." Courts have held, however, that "data compilations," as that term is used in Rule 34, does not include metadata. See Mich. First Credit Union v. Cumis Ins. Soc'y, Inc., No. 05-74423, 2007 WL 4098213 at *2 (E.D. Mich. Nov. 16, 2007); Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, No. 05-138, 2006 WL 5097354 at *7-8 (E.D.K.Y. Dec. 18, 2006); see also 23 NO. 10 FEDLIT 10 ("Failing to make a specific request for metadata means there is a good chance it won't be included."). Cf. Haka v. Lincoln Cnty., 246 F.R.D. 577, 578 (W.D. Wis. 2007) (noting party specifically requested all "documents, notes, memos, emails and metadata").

3. Citing Federal Rule of Civil Procedure 34(b)(2)(E), Defendants also seem to take exception to the form in which Plaintiff produced the documents. (Doc. 66 at 4-5). To the extent that Defendants seek to compel the reproduction of the documents in native format, the motion is denied. The documents were produced in November 2014 and Defendants did not make an objection until December 2015. Any objection to the form of production has been waived. See Ford Motor Co. v. Edgewood Props., Inc., 257 F.R.D. 418, 425-26 (D.N.J. 2009).

8